IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES GYPSUM COMPANY, )
)
                Plaintiff, )
)
v. ) Case No. 18-2538-JWL
)
LEVEL 5 TOOLS, LLC, and )
ASIA TECH SOURCE CO., LTD., )
)
                Defendants. )
)
_____)

# MEMORANDUM AND ORDER

This patent infringement case comes before the Court on the motion to dismiss filed by defendant Asia Tech Source Co., Ltd. ("ATS") (Doc. # 20). For the reasons set forth below, the motion is **denied in part and remains pending in part**. The motion is denied to the extent based on the failure to state a claim. The motion remains pending to the extent based on a lack of personal jurisdiction or insufficiency of service, and plaintiff shall be permitted to conduct jurisdictional discovery relating to those issues.

## I.     Personal Jurisdiction

ATS seeks dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The Court "applies the law of the Federal Circuit, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case." *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

Under Federal Circuit law, the district court must first determine whether the defendant may be subjected to jurisdiction under the law of the forum state. *See id.* The Kansas Supreme Court has held that "[t]he Kansas long arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution." *See Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 777 (1987). In such case, the district court must then determine whether the exercise of personal jurisdiction over the defendant would offend due process. *See Red Wing*, 148 F.3d at 1358. That due process analysis has two steps: first, the court determines whether the defendant established "minimum contacts" with the forum state, such that it should reasonably anticipate being haled into court there; second, any such minimum contacts are considered in light of other factors to determine whether the exercise of jurisdiction would comport with "fair play and substantial justice." *See id.* (citations omitted). In this case, ATS has not addressed those "other factors" or argued that the exercise of jurisdiction would be unfair in this case; thus the Court considers only ATS's argument that the requisite "minimum contacts" are lacking here.

In response to ATS's motion, plaintiff does not argue that this Court may exercise general jurisdiction over ATS; rather, plaintiff argues that the Court may exercise specific jurisdiction because plaintiff's patent infringement claims arose out of or relates to ATS's contacts with Kansas. *See id.* at 1359. Specifically, plaintiff argues that ATS's shipment of infringing products to a company in Kansas provides the necessary contact with the forum. ATS does not dispute that if it did have minimum contacts with Kansas as alleged,

plaintiff's claims will have arisen from those contacts, such that this Court could exercise specific jurisdiction.

The Court then considers whether ATS did have minimum contacts with Kansas. Such contacts must have been purposefully directed at the forum or its residents. *See id.* Random, fortuitous, or attenuated contacts do not count in this calculus; nor do contacts resulting from the unilateral activity of others. *See id.* A single act can support specific jurisdiction so long as it creates a substantial connection with the forum and not merely an attenuated affiliation. *See id.*

In making this determination concerning jurisdiction, the Court resolves all factual disputes in the plaintiff's favor. *See Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). If the plaintiff's factual allegations are not directly controverted, they are taken as true, and the plaintiff need only make a prima facie showing to support jurisdiction. *See id.* Thus, any conflicts in facts contained in declarations submitted by the parties must be resolved in favor of the plaintiff. *See Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Plaintiff names as defendants ATS and Level 5 Tools, LLC ("Level 5"), a Kansas LLC located in Kansas City, Kansas, that sells drywall finishing tools in competition with plaintiff and plaintiff's licensees. Plaintiff alleges that certain of Level 5's products, sold

over the internet and in brick-and-mortar stores, infringe plaintiff's design patents. Plaintiff further alleges that ATS sold infringing products in Kansas to Level 5.[1]

In moving to dismiss, ATS has submitted a declaration by Dan Cooper, ATS's owner and president, stating the following: ATS is a Taiwanese LLC with its headquarters in Taiwan. ATS owns no property in the United States, has no place of business in the United States, is not registered to do business in any state, and has no registered agent for receiving service of process in Kansas or any other state. ATS has no distributors in the United States and has no agreement with any company to distribute goods in the United States. Customers purchase drywall tools from ATS by placing orders through ATS's office in Taiwan. ATS then has the tools manufactured by third parties in China according to the customers' designs. ATS ships the finished goods to a Chinese port and has them loaded on a vessel, but ATS does not address or ship those packages; rather, customers take title to the goods in China and arrange for the shipping of the goods to their destinations. ATS does not have any control over or "advance knowledge" of the final destinations. Level 5 sometimes purchases goods from ATS pursuant to those procedures, using a "forwarder" in China to arrange for the shipment from that country.

In response, plaintiff has submitted a declaration by its officer, William White. Mr. White states that results of a search of a trade database include 186 instances in which ATS is listed as the "Shipper Declared", including six shipments to Level 5. Mr. White further

---

[1] Plaintiff has also alleged that ATS operates an interactive website, but ATS has submitted evidence that the site is not interactive, and plaintiff does not rely on the existence of the website in opposing ATS's motion to dismiss.

4

states that he accessed a bill of lading from another trade database that gives ATS as the "Shipper Name" for a 2018 shipment to Level 5. The search results and bill of lading are attached as exhibits to the declaration.

Plaintiff argues that it has thus controverted ATS's evidence by submitting evidence that ATS has shipped goods to the United States and specifically to Level 5. ATS objects to this evidence as improper hearsay, but the Federal Circuit "has held that there is no strict prohibition on a court's consideration of hearsay in connection with" a motion to dismiss for lack of personal jurisdiction. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 889 n.1 (Fed. Cir. 2008) (citing cases). The Court does agree with ATS, however, that these search results do not necessarily controvert ATS's declaration. "Shipper" is not defined with respect to the documents provided by plaintiff, and those documents do not really provide evidence concerning ATS's involvement in the shipment of the goods to Level 5. Thus, plaintiff has not controverted ATS's evidence that ATS merely places the goods at a Chinese dock and that the customer then takes title and arranges for the shipment.

If ATS was involved in shipping the accused tools to Kansas, such conduct would appear to fit within the scope of contacts deemed sufficient by the Federal Circuit. In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), which ATS describes as the seminal case from the Federal Circuit on this issue, the court held that the district court had erroneously declined to exercise jurisdiction over a Chinese defendant and its importer who had purposefully shipped the accused goods to the forum state through an established distribution channel. *See id.* at 1565. The court held that the following conduct satisfied due process: "defendants, acting in consort, place the accused [item] in

the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *See id.* at 1566. In noting that the presence of an established distribution channel is a significant factor, the court distinguished cases lacking such a channel, in which alien sellers had sold to American companies but had no reasonable bases for knowing that the goods would necessarily end up in the forum state. *See id.* at 1565 n.15 (citing cases). In the present case, if ATS was involved in knowingly shipping the accused goods to a Kansas company, that conduct would similarly be deemed sufficient by the *Beverly Hills* court. ATS argues that there is no "established distribution channel" in this case, but it provides no support for that statement. In fact, if ATS repeatedly sold goods to a company that would resell those goods in Kansas, that mechanism could reasonably be considered an established channel for the distribution of ATS's goods in Kansas. ATS sold to a resident of the forum; thus, this is not a situation, as in the cases distinguished in *Beverly Hills*, in which the alien company merely sold to an American company that was not a resident of the forum state.

In *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343 (Fed. Cir. 2016), the Federal Circuit again reversed a district court's dismissal of an alien defendant for lack of personal jurisdiction. In holding that the exercise of jurisdiction satisfied due process, the court noted that the defendant had purposefully shipped accused products to retailers located in the forum state, fully expecting that the products would then be sold there, which meant that the defendant had purposefully directed its actions to the state and indicated an intent to serve not the United States market generally but the forum state market specifically. *See*

*id.* at 1350. The court noted that that was not a case in which a manufacturer sold its products to an independent distributor who then distributed the products across the country, such that the products fortuitously would have reached the forum from the stream of commerce because of the unilateral effort of the distributor. *See id.* at 1351. Similarly, in the present case ATS sold to a Kansas reseller, not to a distributor located elsewhere.

ATS also cites *AFTG-TG, LLC v. Nuvoton Technology Corp.*, 689 F.3d 1358 (Fed. Cir. 2012), in which the court affirmed the dismissal of an alien company for lack of jurisdiction. In that case, however, the accused products were not sold directly to residents of the forum state, *see id.*, as they were in the present case.

ATS relies heavily on its evidence that Level 5 and its other buyers do the actual shipping of the purchased products from China to their destinations. The Federal Circuit rejected a similar argument in *Polar Electro*, however. In that case, a separate company took title in the other country and paid for and directed the shipments to the United States. *See Polar Electro*, 829 F.3d at 1350. The court noted, however, that the defendant physically fulfilled the orders, packaged the products, and prepared the shipments in the other country, and thus that it purposefully availed itself of the forum state market. *See id.* at 1350.

Thus, if ATS knowingly shipped (or prepared for shipment) accused products to Level 5 in Kansas, such minimum contacts with Kansas would be sufficient to allow the Court to exercise personal jurisdiction over ATS under Federal Circuit law. The problem is that the extent of ATS's knowledge remains unknown. ATS's declaration states that it does not have "advance knowledge" of the final destination of the goods that it sells. That

7

language, however, leaves open the possibility that ATS does eventually learn where its products are shipped, which in turn means that ATS may have known that its products were being shipped to Level 5 in Kansas after its first transaction with that company. Moreover, plaintiff alleges in its complaint that it notified ATS by letter of its claims of infringement, but plaintiff has not specifically alleged that Level 5 imported infringing goods from ATS after ATS received that letter. If so, and if plaintiff's claim of infringement includes such products, then ATS may have had knowledge that its goods were bound for Kansas at that time.[2] Plaintiff has not provided any such information, however. Because plaintiff has not responded to ATS's evidence with uncontroverted allegations or reliable evidence that ATS knowingly shipped (or prepared for shipment) infringing goods to Level 5 in Kansas, plaintiff has not made the required prima facie showing of minimum contacts here.

In such event, plaintiff requests that it be permitted to take jurisdictional discovery. The law of the Tenth Circuit governs this request. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021-22 (Fed. Cir. 2009) (reviewing a denial of jurisdictional discovery under the law of the regional circuit). The Tenth Circuit has held that "a refusal to grant jurisdictional discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant and that prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *See Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino and*

---

[2] In addition, plaintiff has alleged that Level 5 sold from brick-and-mortar stores, but it has not identified the location of those stores. If goods were sent from China directly to such stores in other states, ATS would not have had any contacts with Kansas with respect to those shipments.

*Resort*, 629 F.3d 1173, 1189 (10th Cir. 2010) (internal quotations omitted) (quoting *Sizova v. National Inst. of Stds. and Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)).

As noted above, a more satisfactory showing of the facts regarding ATS's knowledge is necessary. Therefore, the Court grants plaintiff's request for jurisdictional discovery. Plaintiff shall seek leave to engage in particular discovery from the Magistrate Judge, who shall set the necessary schedule in which such discovery shall take place. The Magistrate Judge shall also set deadlines at the conclusion of such discovery for plaintiff and then ATS to file one supplemental brief addressing this portion of ATS's motion to dismiss, which remains pending.[3]

## II. <u>Sufficiency of Service of Process</u>

ATS also seeks dismissal based on insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). According to the filed returns of service, plaintiff attempted to serve process on ATS by separately serving Gerry Cooper and Roni Schmidt in the United States. As its sole basis for arguing that service was sufficient, plaintiff relies on the provision in

---

[3] In response to ATS's motion, plaintiff argues in the alternative that the Court may exercise jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which requires that the claim be under federal law, the defendant not be subject to personal jurisdiction in any state's courts, and due process be satisfied. *See id.*; *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1291 (Fed. Cir. 2009). Due process is satisfied in that context by minimum contacts with the United States. Again, however, plaintiff has not made the required showing that ATS knowingly shipped the accused goods to any particular destination, and thus the Court cannot presently exercise jurisdiction over ATS under this rule. This basis for jurisdiction may be revisited in the parties' supplemental briefs.

9

Fed. R. Civ. P. 4(h)(1)(B) that allows a plaintiff to serve a domestic or foreign corporation by serving "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *See id.*[4] Plaintiff does not dispute ATS's evidence that no person in the United States is authorized to accept service on its behalf. Plaintiff instead argues that either Gerry Cooper or Roni Schmidt is an "officer" or a "managing or general agent" of ATS.

For purposes of this rule, the corporate "officer" need not be the chief executive officer. *See* 4A Chas. A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1102 (3d ed. 2002). One legal dictionary states that in corporate law, the term "officer" refers especially to "a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer." *See Black's Law Dictionary* at 1193 (9th ed. 2009). Courts have held that a director, absent other duties, is not an "officer" for purposes of Rule 4(h). *See* 4A Wright & Miller, *supra*, § 1102. "A managing agent is one authorized to transact all business of a particular kind

---

[4] Rule 4(h) also provides that a corporation may be served in a manner prescribed by Rule 4(e)(1), which in turn provides for service in accordance with the law of the forum state. *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Kansas law provides for service on a corporation by service on "an officer, manager, partner or a resident, managing or general agent," or by leaving a copy of the summons and petition "at any of [the defendant's] business offices with the person having charge thereof." *See* K.S.A. § 60-304(e)(1), (2). Kansas law also provides that valid service is effected by substantial compliance with a prescribed method of service if the defendant was made aware of the action. *See* K.S.A. § 60-204; *Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 715-16 (10th Cir. 2005). Plaintiff has not argued that service was proper under Rule 4(h)(1)(A) and Kansas law, and therefore the Court does not consider the question. The parties may address the issue of service under Kansas law, however, in engaging in jurisdictional discovery and in filing their supplemental briefs.

10

at a particular place, and must be vested with powers of discretion rather than under direct superior control." *See* 1 James W. Moore, *Moore's Federal Practice* ¶ 4.53[2][b] (3d ed. 2018). A person may qualify as a managing or general agent for purposes of this rule "if the individual is in a position of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors." *See* 4A Wright & Miller, *supra*, § 1103. "Moreover, a subordinate employee may be treated as a managing or general agent if the corporation has held that person out as having that status." *See id.* The Third Circuit has discussed this requirement as follows:

> The determination whether an individual is "a managing or general agent" depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which are sufficiently necessary to the corporation's operations. He should be a responsible party in charge of any substantial phase of the corporation's activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity. Authority to act as agent sporadically or in a single transaction ordinarily does not satisfy this provision of the Rule.

*See Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 513 (3d Cir. 1971).

The Court first addresses the attempted service on Gerry Cooper. In his declaration, Dan Cooper, president and owner of ATS, states as follows:

> Gerry Cooper is the Chairman for [ATS]. He resides at [an address in Virginia]. He is not an officer or employee of [ATS], and he receives no salary or monetary compensation of any kind from the company. He has no ownership stake in [ATS] and is not vested with any control over the business operations of the company. He periodically consults with company leadership about strategic business decisions.

For its sole evidence on this issue, plaintiff points to ATS's website. In the "About Us" section, under a description of ATS, the site list five persons (each with a photograph and

11

a descriptive paragraph) under the heading "Leadership", and "Gerry Cooper, Chairman" is the first individual listed, just above Dan Cooper, ATS's owner and president. The entry for Gerry Cooper states among other things that he founded ATS in 2001; that he "has a demonstrated track record of achieving cost removal and outstanding product quality results;" and that he lived in Asia for 19 years and presently lives in Virginia.

The Court concludes that a more satisfactory showing of the facts is necessary to allow the Court to determine whether Gerry Cooper is a "managing or general agent" for purposes of Rule 4(h). Too much remains unknown concerning Mr. Cooper's duties and involvement with ATS. Both on the website and in ATS's declaration, Mr. Cooper is given the title of "Chairman", but that title suggests that he "chairs" or leads the company or a body relating to it, and no such body has been identified. *See Black's Law Dictionary*, *supra*, at 261 (defining "chair" and "chairman" as "[t]he officer who heads an organization"). Is Mr. Cooper the Chairman of the Board of Directors for ATS? Does he run any regular meetings of a body that exercises any control or performs any executive functions for ATS? Dan Cooper states that Gerry Cooper has no control over ATS's business operation and periodically consults about strategy, but the extent of his duties and activities for ATS is not explained. Moreover, the fact that ATS holds Gerry Cooper out on its public website as a "leader" of ATS (and the first leader listed) suggests that he does act as a leader for the company in some way. The site's description of him as a person with a demonstrated track record further suggests to the public that his experience presently aids ATS in conducting its business. Accordingly, plaintiff may take jurisdictional discovery concerning the issue of whether Gerry Cooper should be considered and officer

or a managing or general agent of ATS, on the same terms set forth above with respect to ATS's minimum contacts with Kansas.

The Court makes the same ruling with respect to the attempted service on Mr. Schmidt. Dan Cooper's declaration states as follows:

> [ATS] employs Roni Schmidt as a non-officer sales director. Mr. Schmidt resides at [an address in California]. He is the only employee of the company that lives in the United States. Mr. Schmidt's duty is to identify customers in the Americas for [ATS]. He does not oversee a staff and does not direct any activity at the company's headquarters in Taiwan.

On ATS's website, "Roni Schmidt, Sales Director" is the fifth and final person listed under the "Leadership" heading, and his description states among other things that he "service[s]" customers in North, Central, and South America and that he resides in California, "which makes it easier for him to visit our customers." Again, Mr. Schmidt's actual duties and authority remain unknown. Is he effectively the sales manager for the entire company or for one region of the world? Does he merely identify customers, or does he perform other duties ("servicing" those customers)? Does he exercise discretion in entering into agreements with customers on ATS's behalf? *See* 4A Wright & Miller, *supra*, § 1103 (salesperson may be a managing or general agent if he has been given additional authority beyond the solicitation of orders). Plaintiff may engage in jurisdictional discovery, on the same terms set forth above, to attempt to answer such questions relating to whether Mr. Schmidt is a managing or general agent of ATS. Therefore, to the extent that ATS argues that service of process was insufficient, its motion to dismiss remains pending.

### III. Sufficiency of Pleading

Finally, ATS argues that the complaint should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

ATS argues that the complaint does not sufficiently identify its products that infringe plaintiff's patents. The Court rejects this argument. In the complaint, plaintiff has identified by name several products sold by Level 5 that allegedly infringe plaintiff's patents. ATS argues that the complaint does not expressly allege that ATS sold those same specific products, but the Court will not read plaintiff's allegations so restrictively. Plaintiff has alleged that ATS sold infringing products to Level 5 and that Level 5 sold specific infringing products; thus, viewing all reasonable inferences in plaintiff's favor, plaintiff has alleged that ATS sold the products identified by name as the infringing

14

products.[5]  ATS's motion is therefore denied to the extent based on the argument that the complaint fails to state a claim against ATS.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion to dismiss filed by defendant ATS (Doc. # 20) is hereby **denied in part and remains pending in part**.  The motion is denied to the extent based on the failure to state a claim.  The motion remains pending to the extent based on a lack of personal jurisdiction or insufficiency of service, and plaintiff shall be permitted to conduct jurisdictional discovery relating to those issues, as set forth herein.

IT IS SO ORDERED.

Dated this 22nd day of January, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[5] The case cited by ATS, *Artrip v. Ball Corp.*, 735 F. App'x 708 (Fed. Cir. 2018), *pet. for cert. filed* (U.S. Nov. 21, 2018), is readily distinguished, as in that case the complaint did not identify the accused items.  *See id.* at 714.  In this case, plaintiff identified the allegedly infringing items.